FILED

2022 Feb-28  PM 04:03
U.S. DISTRICT COURT
N.D. OF ALABAMA



## IN THE UNITED STATES DISTRICT COURT FOR THE
### NORTHERN DISTRICT OF ALABAMA
### EASTERN DIVISION

| | | |
|---|---|---|
| **MELINDA WRIGHT,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO.:** |
| | ) | **1:21-CV-00447-NAD** |
| | ) | |
| **LEGACY CABINETS,** | ) | |
| | ) | |
| **Defendant.** | ) | |

### BRIEF IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant Legacy Cabinets, LLC ("Legacy") submits this Statement of Undisputed Facts and Memorandum Brief in support of its Motion for Summary Judgement (Doc. 22.) This Brief is supported by Legacy's previously filed Evidentiary Submission.  (Docs. 23 & 24.)

## <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS...........................................................................................................i

TABLE OF AUTHORITIES .................................................................................................ii

INTRODUCTION ................................................................................................................ 1

NARRATIVE STATEMENT OF UNDISPUTED FACTS ............................................... 1

ARGUMENT ....................................................................................................................... 7

    Legacy Did Not Engage in Disability Discrimination (Count One). .......................... 9

    Legacy Did Not Engage in Gender Discrimination (Count Two)............................. 12

    Legacy Did Not Retaliate Against Wright in Violation of Title VII (Count Three)................ 15

    Legacy Did Not Retaliate Against Wright in Violation of the ADA (Count Four). ................ 17

CONCLUSION.................................................................................................................. 18

## **TABLE OF AUTHORITIES**

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ........................................................................................ 7, 8

*Armindo v. Padlocker, Inc.*,
209 F.3d 1319 (11th Cir. 2000) ............................................................................ 15

*Armstrong v. Flowers Hosp., Inc.*,
33 F.3d 1308 (11th Cir. 1994) ....................................................................... 12, 14

*Bailey v. Allgas, Inc.*,
284 F.3d 1237 (11th Cir. 2002) ............................................................................. 8

*Bolton v. Baldwin Cty. Pub. Sch.*,
627 F. App'x 800 (11th Cir. 2015) ...................................................................... 17

*Bryant v. Jones*,
575 F.3d 1281 (11th Cir. 2009) ........................................................................... 16

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ............................................................................................. 8

*Chapman v. AI Transp.*,
229 F.3d 1012 (11th Cir. 2000) ........................................................................... 14

*Combs v. Plantation Patterns*,
106 F.3d 1519 (11th Cir. 1997) ........................................................................... 14

*Conner v. Fort Gordon Bus Co.*,
761 F.2d 1495 (11th Cir. 1985) ........................................................................... 13

*Cooper v. Walker Cty. E-911*,
2018 WL 3585217 (N.D. Ala. July 26, 2018) ...................................................... 17

*D'Angelo v. ConAgra Foods, Inc.*,
422 F.3d 1220 (11th Cir. 2005) ........................................................................... 10

*Davis v. Auburn Bank*,
2016 WL 1605349 (M.D. Ala. Mar. 30, 2016) ..................................................... 17

*Davis v. Bank*,
2016 WL 1560404 (M.D. Ala. Apr. 18, 2016) ...................................................... 17

*Demers v. Adam Homes of NW Fla., Inc.*,
321 F. App'x 847 (11th Cir. 2009) ...................................................................... 16

*Duckworth v. Pilgrim's Pride Corp.*,
   764 F. App'x 850 (11th Cir. 2019) ............................................................. 9, 10, 11

*Earl v. Mervyns, Inc.*,
   207 F.3d 1361 (11th Cir. 2000) ...................................................................... 9, 10

*Edwards v. Chime Solutions, Inc.*,
   2021 WL 2581597 (N.D. Ga. Feb. 5, 2021) ......................................................... 16

*Ferrell v. Masland Carpets, Inc.*,
   97 F. Supp. 2d 1114 (S.D. Ala. 2000) ................................................................ 14

*Furcon v. Mail Ctrs. Plus, LLC*,
   843 F.3d 1295 (11th Cir. 2016) ........................................................................ 16

*Holly v. Clairson Industries, LLC*,
   492 F.3d 1247 (11th Cir. 2007) .......................................................................... 9

*Jackson v. State of Ala. St. Tenure Comm'n*,
   405 F.3d 1276 (11th Cir. 2005) ........................................................................ 14

*Jefferson v. High Sec Labs Inc.*,
   2021 WL 6137295 (N.D. Ala. Dec. 29, 2021) ................................................... 7, 15

*Jeffery v. Sarasota White Sox, Inc.*,
   64 F.3d 590 (11th Cir. 1995) .............................................................................. 8

*Jeudy v. Att'y Gen., Dep't of Justice*,
   482 F. App'x 517 (11th Cir. 2012) ....................................................................... 9

*LaChance v. Duffy's Draft House, Inc.*,
   146 F.3d 832 (11th Cir. 1998) .......................................................................... 10

*Lewis v. City of Union City*,
   918 F.3d 1213 (11th Cir. 2019) .............................................................. 12, 13, 14

*Lewis v. City of Union City*,
   934 F.3d 1169 (11th Cir. 2019) ........................................................................ 14

*Lucas v. W.W. Grainger, Inc.*,
   257 F.3d 1249 (11th Cir. 2001) ........................................................................ 10

*Maniccia v. Brown*,
   171 F.3d 1364 (11th Cir. 1999) ........................................................................ 14

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986) ......................................................................................... 8

*McDonnell Douglas Corp. v. Green*,
   411 U.S. 792 (1973) ................................................................................ 12

*Miller v. Nat'l Cas. Co.*,
   61 F.3d 627 (8th Cir. 1995) ...................................................................... 11

*Mize v. Jefferson City Bd. of Educ.*,
   93 F.3d 739 (11th Cir. 1996) ...................................................................... 8

*Perryman v. Johnson Prods. Co.*,
   698 F.2d 1138 (11th Cir. 1983) ................................................................ 13

*Quigg v. Thomas Cty. Sch. Dist.*,
   814 F.3d 1227 (11th Cir. 2016) ................................................................ 13

*Rogers v. CH2M Hill, Inc.*,
   18 F. Supp. 2d 1328 (M.D. Ala. 1998) ..................................................... 11

*Rojas v. Fla.*,
   285 F.3d 1339 (11th Cir. 2002) ................................................................ 12

*Saint Mary's Honor Ctr. v. Hicks*,
   509 U.S. 502 (1993) ................................................................................ 14

*Thomas v. Ashton & Co., Inc.*,
   2021 WL 640815 (S.D. Ala. Feb. 18, 2021) .............................................. 8

*Thomas v. Cooper Lighting, Inc.*,
   506 F.3d 1361 (11th Cir. 2007) ................................................................ 16

*Univ. of Tex. SW Med. Ctr. v. Nassar*,
   570 U.S. 338 (2013) ................................................................................ 16

*Vega v. Invsco Group, Ltd.*,
   432 F. App'x 867 (11th Cir. 2011) ............................................................ 8

*Wilson v. B/E Aerospace, Inc.*,
   376 F.3d 1079 (11th Cir. 2004) ................................................................ 13

**Statutes**

29 C.F.R. § 1630.2(o)(1)(ii) ......................................................................... 10

42 U.S.C. § 12111(8) .................................................................................... 10

42 U.S.C. § 2000e(k) ............................................................................. 12, 15

42 U.S.C. § 2000e–2(a)(1) ........................................................................... 12

iv

42 U.S.C. § 2000e-3(a) ................................................................................................ 15

42 U.S.C. 12112(b)(5)(A) ........................................................................................... 11

**Rules**

Fed. R. Civ. P. 56 ......................................................................................................... 8

## INTRODUCTION

Plaintiff Melinda Wright alleges employment discrimination in violation of the Americans with Disabilities Act ("ADA"), in connection with the termination of her employment at Legacy Cabinets. Wright also alleges discrimination and retaliation in violation of the Pregnancy Discrimination Act and Title VII of the Civil Rights Act, as well as retaliation in violation of the ADA. Wright cannot establish that the reason for her termination was pretextual, nor can she establish discrimination through any other method of proof. Wright's failure to comply with Legacy's attendance policy resulted in her termination of employment.

As set forth in this Brief, summary judgment in favor of Legacy is proper and this case should be dismissed with prejudice.

## NARRATIVE STATEMENT OF UNDISPUTED FACTS

1.      Plaintiff Melinda Wright worked at Defendant Legacy Cabinets, LLC, first through staffing company Onin Staffing and then as a Legacy employee from January 2018 to November 19, 2018.  (Doc. 24-1 (Deposition of Plaintiff Melinda Wright) (41:16-42:2, 55:1-6); Doc. 23-4 (Excerpts from Legacy's Interrogatory Responses), pp.3, 6 (#3 & 8).)[1]

2.      Legacy employs approximately 400 employees at its plant in Eastaboga, Alabama, where it manufactures cabinetry. (Doc. 23-2 (Deposition of Legacy 30(b)(6) Representative Mark Eady), p.104.)

3.      Wright worked on a variety of tasks at Legacy's plant, including putting hinges on cabinet doors, sanding and assembly. (Doc. 24-1 (51:21-52:19, 53:16-23, 63:4-9, 66:7-14).) At the

---

[1] Wright did not work on-site at Legacy from February to April 2018 because she was recovering from an on-the-job injury. (Doc. 24-1 (55:22-56:9, 58:23-60:13).)

time of her termination she was working in the assembly department. (Doc. 24-1 (89:23-90:5).) Wright worked four days a week, Monday through Thursday. (Doc. 24-1 (64:1-13).)

4.      Although Wright's performance is not relevant to the reasons for her termination from employment, she alleges that she "excelled" at her job. (Doc. 1, p.4.) However, she received two written disciplinary actions and one additional write-up during her brief employment at Legacy. (Doc. 24-1 (48:4-17), pp.57-58, 69 (Exs. 7, 8, 18).) Those disciplinary actions were not a factor in the decision to terminate Wright's employment for being absent for two consecutive shifts without notice. (Doc. 23-2 (39:3-20).)

5.      Wright was given a copy of the employee handbook when she started at Legacy as a temporary employee in January 2018 and signed an acknowledgement form that she received it. (Doc. 24-1 (44:5-14, 46:1-20), p.49 (Ex. 2).) She later acknowledged receipt of the employee handbook when she returned to Legacy after an injury in April 2018, and again in August 2018 when she became a Legacy employee. (Doc. 24-1 (60:1-18, 95:17-97:4), pp.56, 63 (Exs. 6, 12).) Wright also received and acknowledged receipt of a list of Legacy policies, which included the statement "Attendance – Very Important to be here everyday and be on time. Stay in contact with your supervisor on days and hours. If you're going to be late or out make sure you call into HR one hour before your shift begins." (Doc. 24-1, p.59 (Ex. 9).) Wright acknowledged at her deposition that the employee handbook states that regular attendance and being on time every day is an essential function of every employee's job. (Doc. 24-1 (88:18-89:22), p.61 (Ex. 11) ("Regular attendance and being on time every day is an essential function of every employee's job.")) Attendance is important to the company because if employees are not present, it slows the manufacturing lines down. (Doc. 23-2 (118:16-23) ("It's very serious."))

2

6.      The most relevant portion of the attendance policy in the employee handbook is as follows:

**REGULAR ATTENDANCE**

The Company places a very high priority on attracting and retaining employees who accept responsibility to perform their assigned duties conscientiously and in a professional manner. A superior attendance record is considered to be a fundamental prerequisite for meeting one's responsibilities as a valued employee. Regular attendance and being on time every day is an essential function of every employee's job.

Legacy maintains an Information Line for general information or to check for closings or delays due to weather or other emergencies. The number is 256-831-4985.

All employees are expected to report to work on time as scheduled. Any employee who cannot meet his/her work schedule is required to personally contact the human resources department at least one hour prior to the start of the employee's workday. Any consecutive absence of two days without personally contacting the human resources department will be considered a voluntary resignation and will result in the employee's automatic termination. If you are absent from work for 3 or more days due to illness you must, when you return to work, deliver to your immediate supervisor a statement signed by your attending physician stating that you were examined and/or received treatment for your illness from that physician. Failure to deliver such statement will result in discipline, up to and including discharge.

In addition, Legacy Cabinets may require you either to submit a statement from your physician or to be examined by a company-designated physician in other instances at its discretion such as where abuse is suspected (e.g. where an employee's record indicates a pattern of short absences before or after holidays and weekends).

(Doc. 23-2 (65:14-67:3), pp.59-60 (Ex. 7, EEOC 38-39).)  Critically, as set forth above and in the handbook, "[a]ny consecutive absence of two days without personally contacting the human resources department will be considered a voluntary resignation and will result in the employee's automatic termination." (*Id*.) (Emphasis added.)

7.      In addition, if an employee is absent for three or more days due to illness, she must, when she returns to work, deliver to her immediate supervisor a statement signed by her attending physician that she was examined and/or received treatment for her illness from her physician. (*Id*.)

8.      Wright testified that she learned she was pregnant on October 22, 2018 and called out of work that day to go to the doctor. (Doc. 24-1 (90:9-91:4).)  She texted a co-worker to tell her she was pregnant, and when she returned to work the next day, her entire line where she worked

knew she was pregnant. (*Id.*) Her supervisors in production also moved her to a different position because she was pregnant. (Doc. 24-1 (158:16-160:9).) Wright further testified that she informed Ricardo Gelpi in Human Resources that she was pregnant that next day when she returned to work, however Gelpi does not recall knowing that Wright was pregnant until the time of her termination. (Doc. 24-1 (92:17-93:2); Doc. 23-3 (Declaration of Ricardo Gelpi), p.2 ¶ 5; Doc. 23-4, p.7 (#10).)[2]

9.      Legacy maintained a log of employees who called in daily to report absences. (Doc. 24-1 (118:2-13) (Wright: "I know that whenever you call in you leave a voice mail. And then they write it down whenever they got to work."); Doc. 23-2 (72:4-73:6), pp.81-95 (Ex. 9).) Wright testified that when she discovered she was pregnant on October 22, 2018, she called in that day: "I said that I was pregnant, and that I would return as soon as I found out if the baby was going to be okay." (Doc. 24-1 (118:14-20).) Wright was later absent on November 6-7, 2018 (Tuesday - Wednesday), calling in on November 6 to report that she would be out with a doctor's excuse until Thursday November 8 when she returned. (Doc. 23-2, p.44 (Ex. 6), p. 89 (Ex. 9, Legacy 131)); Doc. 23-7 (Time Records), p.3.)

10.     Wright was absent the entire following workweek, Monday through Thursday, November 12-15, immediately prior to her termination from employment.[3] (Doc. 23-2, pp.44 (Ex. 6) 90-92, (Ex. 9, Legacy 132-134); Doc. 23-7, p.3.) During that period, Wright sought medical attention for pregnancy-related symptoms, and was told by one of her doctors that she would need

---

[2] For purposes of this motion, Legacy acknowledges that in the light most favorable to Wright, Gelpi and other supervisors had knowledge that Wright was pregnant before she was terminated.

[3] Human Resources kept track of employees' attendance on a calendar. (Doc. 23-2 (60:17-61:10), p.44 (Ex. 6).)

4

to remain on bed rest until at least November 30, 2018. (Doc. 24-1 (121:9-122:14).) Wright does not recall exactly which days she called in that week to report her absence. (Doc. 24-1 (133:10-135:23) ("I don't know exactly what day I called in or didn't") ("I don't know that I was a no call no show").) However, according to Legacy's records she only called in to report her absence on November 12, November 13, and November 14. (Doc. 23-2, pp.90-92 (Ex. 9, Legacy 132-134); Doc. 23-3, pp.2-3, ¶ 4.)  Wright testified that Legacy knew that she was going to be out of work for longer and so she thought she did not need to call, but does not have any testimony or other evidence to support the proposition that Human Resources knew she would be out for longer; she did not speak with Human Resources until the following Monday, November 19 after she had already not called in before two consecutive shifts.

11.    Ricardo Gelpi in Human Resources processed Wright's termination from employment on November 19, treating it as an automatic resignation, because she violated the attendance policy by being absent without calling in on two consecutive shifts, Thursday November 15 and Monday November 19. (Doc. 23-2 (22:9-24:13, 70:12-16, 71:2-13, 84:2-14); Doc. 23-3, pp.2-3, ¶ 4; Doc. 23-4, pp.3-5 (#3-6); Doc. 23-5 (Plaintiff's Responses to Interrogatories), p.3 (#8).) This personnel action was not uncommon because of the high turnover the company was experiencing at the time, when employees would simply stop reporting to work. (Doc. 23-2 (57:10-20) ("frankly, the way most people leave the company back then, and even to some extent now, is they just quit showing up. So you make a note that you've terminated them based on attendance and move on.")) This action was documented on the cover of Wright's personnel file: "11-20-18 Term due to attendance./Not eligible for FMLA (Notes Enclosed)". (Doc. 23-2 (39:21-40:3, 44:18-45:20), p.40 (Ex. 2) and p.43 (Ex. 5); Doc. 23-3, pp.2-3, ¶¶ 3-4.)

12.     When Wright came to Legacy on the afternoon of Monday, November 19, she presented at least one doctor's note to Gelpi reflecting that she was receiving treatment for her pregnancy, and to excuse her from work starting November 17, 2018 for 13 days. (Doc. 24-1 (126:20-127:4), p.91 (Ex. 23).) Wright testified that she produced an additional doctor's note at the same meeting from the hospital, excusing her from work for two days as of November 13, 2018, without any reason indicated for the emergency room visit.[4] (Doc. 24-1 (131:13-133:6), p.93 (Ex. 25).) However, any doctors' notes presented on November 19 were irrelevant because Wright's termination was already going forward because of her violation of the attendance policy. (Doc. 23-2 (96:1-97:3, 102:1-12); *see also* Doc. 23-4, pp.4, 8 (#5, 17).) Regardless, Gelpi acknowledged at his meeting with Wright that she was unable to work and indicated that while he could have saved her job for a week (which was less time than she needed off); she would need to re-apply to work at Legacy once she was released to work. (Doc. 24-1 (138:11-19, 139:4-11); Doc. 23-2 (54:4-14) ("it doesn't matter whether she was pregnant or ill or had another reason why she couldn't report to work. The problem is, she wasn't able to work."), p.43 (Ex. 5).) Gelpi memorialized this conversation in a note for Wright's personnel file. (Doc. 23-2, p.43 (Ex. 5); Doc. 23-3, pp.2-3, ¶ 4.)  Wright did not re-apply because she was not released to work without any restrictions through the duration of her pregnancy. (Doc. 24-1 (139:12-19); *see also* Doc. 23-3, p.3, ¶ 6.)

13.     Wright does not recall any statements that suggested that she would be terminated or subjected to adverse action because of her pregnancy. (Doc. 23-5, p.3 (#6).) She did not make any complaints about discrimination against her based on her gender or pregnancy, or other protected status. (*Id*. (#7).)

---

[4] Although not material to this motion, the additional doctor's note is not in her personnel file.

14.     Gelpi did not terminate Wright's employment because of her pregnancy or because of complications associated with her pregnancy, but rather treated it as an automatic resignation as he did other employees who were "no call, no show" for two days.  (Doc. 23-3, p.3, ¶ 5; *see also* Doc. 23-2 (54:4-14).) And this policy was applied to all employees equally. Legacy's 30(b)(6) representative is not aware of any employees who violated this attendance policy and were not terminated. (Doc. 23-2 (67:11-19, *see also* 30:23-31:9) (It is important to keep accurate records of employee attendance and performance so that the company "can make sure we treat the people fairly and we monitor where they are and what their status is."))

15.     Wright filed an EEOC charge dated May 10, 2019, alleging sex, disability, and pregnancy discrimination and retaliation. (Doc. 1-1, pp.2-3.) The EEOC dismissed the charge; advising Wright in a letter that the evidence of record failed to show that non-pregnant employees were not discharged for consecutive absences in accordance with the employer's policy, and that she was discharged for a legitimate, nondiscriminatory reason. (Doc. 1-2; EEOC 0001-2; Doc. 23-6, pp.2-3.) Moreover, the EEOC determined that Wright did not engage in any protected activity until after Legacy determined that she had resigned for missing two consecutive days at work, and therefore could not have been retaliated against. (*Id.*)

## ARGUMENT

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A material fact is one that might affect the outcome of the case." *Jefferson v. High Sec Labs Inc.*, No. 5:19-cv-858-NAD, 2021 WL 6137295, at *5 (N.D. Ala. Dec. 29, 2021) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "[T]he substantive law will identify which facts are material." *Anderson*, 477 U.S. at 248.

"When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593-94 (11th Cir. 1995) (internal quotations and citation omitted). For factual issues to be considered genuine, they must have a real basis in the record. *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996) (citation omitted). Moreover, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citations omitted). Conclusory assertions, unsupported by specific facts, are likely insufficient to defeat a proper motion. *Thomas v. Ashton & Co., Inc.*, No. 1:19-cv-48-TFM-M, 2021 WL 640815, at *3 (S.D. Ala. Feb. 18, 2021) (citation omitted); *see also Vega v. Invsco Group, Ltd.*, 432 F. App'x 867, 870 (11th Cir. 2011) (plaintiff "may not rely merely on allegations or denials in its own pleading; rather, its response must . . . set out specific facts showing a genuine issue for trial.") (quoting Fed. R. Civ. P. 56).

If the nonmoving party fails to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof—that a genuine dispute of material fact exists—the moving party is entitled to summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "The mere existence of some evidence to support the non-moving party is not sufficient for denial of summary judgment; there must be 'sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" *Bailey v. Allgas, Inc.*, 284 F.3d 1237, 1243 (11th Cir. 2002) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-250 (internal citations omitted).

## I.   Legacy Did Not Engage in Disability Discrimination (Count One).

Wright alleges she was a qualified individual with a disability or was perceived as having a disability connected with her pregnancy, and that Legacy violated Title I of the ADA by failing to provide a reasonable accommodation to her. (Doc. 1, pp.5-6.) Wright further alleges that Legacy's termination of Wright's employment was discrimination on the basis of her disability. (Doc. 1, p.6.)

To establish a prima facie case of discrimination under the Americans with Disabilities Act (ADA), a plaintiff must show: (1) she is disabled; (2) she is a qualified individual; and (3) she was subjected to unlawful discrimination because of her disability. *Earl v. Mervyns, Inc.*, 207 F.3d 1361, 1365 (11th Cir. 2000).  If a plaintiff establishes a prima facie case, the employer bears an "exceedingly light" burden of articulating a legitimate, non-discriminatory reason for the employee's termination. *Duckworth v. Pilgrim's Pride Corp.*, 764 F. App'x 850, 853 (11th Cir. 2019). If the employer does so, the burden then shifts back to the plaintiff to present sufficient evidence to create an issue of fact that the employer's reason is discriminatory or pretextual. *Id.*

For purposes of this motion, Legacy does not dispute that Wright was temporarily disabled when her physician ordered bed rest. *Jeudy v. Att'y Gen., Dep't of Justice*, 482 F. App'x 517, 520 (11th Cir. 2012) ("While pregnancy is generally not considered a disability [under the ADA], a pregnancy-related impairment may be considered a disability, if it substantially limits a major life activity.") However, Wright was no longer qualified to work at that point, and in any event her employment was not terminated because of her pregnancy-related impairments.

To establish the second prong of her prima facie case, Wright must prove that she is a "qualified individual." *Holly v. Clairson Industries, LLC*, 492 F.3d 1247 (11th Cir. 2007). A qualified individual is someone with a disability who, "with or without reasonable

accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). "Accordingly, an ADA plaintiff must show either that he can perform the essential functions of his job without accommodation, or, failing that, . . . that he can perform the essential functions of his job with a reasonable accommodation." *D'Angelo v. ConAgra Foods, Inc.*, 422 F.3d 1220, 1229 (11th Cir. 2005) (quotation marks omitted). And an accommodation is "reasonable" and necessary under the ADA only if it enables the employee to perform the essential functions of the job. *Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1259–60 (11th Cir. 2001); *LaChance v. Duffy's Draft House, Inc.*, 146 F.3d 832, 835 (11th Cir. 1998); see also 29 C.F.R. § 1630.2(o)(1)(ii) ("The term reasonable accommodation means: . . . Modifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable an individual with a disability to perform the essential functions of that position . . . .") Here, it is undisputed that Wright was unable to work for several days, was placed on bed rest by her doctor, and that she presented a note from her doctor excusing her from work. Therefore, Wright was not a qualified individual because she could not perform the essential functions of her job because she could not work.

However, regardless of whether Wright established that she was disabled and a qualified individual, she has no evidence that her employment was terminated because of her pregnancy. *Earl*, 207 F.3d at 1365. Wright has no direct evidence of disability discrimination or discriminatory animus. She was terminated for a legitimate non-discriminatory reason, for violating the attendance policy by failing to be at work for two consecutive shifts without calling in. *Duckworth*, 764 F. App'x at 854-855 (finding that employer's reason for terminating the plaintiff, excessive unexcused absences, was a legitimate non-discriminatory reason and there was insufficient

evidence of pretext). Moreover, Gelpi made this decision before he met with Wright and received a doctor's note from her indicating that she was impaired and unable to work.[5] 42 U.S.C. 12112(b)(5)(A) (confining unlawful discrimination to refusal to accommodate employees with "known" physical or mental limitations); *Rogers v. CH2M Hill, Inc.*, 18 F. Supp. 2d 1328, 1336 (M.D. Ala. 1998) ("It is well-accepted, therefore, that ignorance by the employer of the employee's disability is a reason for granting summary judgment in favor of the employer"); *Miller v. Nat'l Cas. Co.*, 61 F.3d 627, 630 (8th Cir. 1995) ("[Defendant] was not obligated to divine the presence of a disability from [plaintiff's] extended absence from work. . . .")

In addition, Wright cannot show that the non-discriminatory reason was pretextual or motivated by disability discrimination. *Duckworth*, 764 F. App'x at 854 (plaintiff "must submit enough evidence to permit a jury to find that the reason [defendant] provided is false, and that the real reason for his firing was discrimination." The policy clearly states that "[a]ny consecutive absence of two days without personally contacting the human resources department will be considered a voluntary resignation and will result in the employee's automatic termination." Wright cannot dispute that she did not call in to report her absence on November 15 and November 19, nor can she dispute that Gelpi processed her termination of employment for that reason. On this record, Wright cannot create a genuine issue of fact of whether disability discrimination was the reason for her termination. *Duckworth*, 764 F. App'x at 855-56 ("None of [plaintiff]'s arguments address whether [defendant] honestly believed that [plaintiff] was violating the attendance policy. . . .[Plaintiff] offers nothing to seriously contest the honesty of [defendant]'s proffered reason. Accordingly, we find [plaintiff] has failed to create a triable issue of fact.")

---

[5] Wright's testimony that Gelpi knew she was pregnant weeks earlier (which he disputes) does not establish that Gelpi knew that she had an impairment that rose to the level of a disability in connection with her pregnancy.

(citing *Rojas v. Fla.*, 285 F.3d 1339, 1342 (11th Cir. 2002) (explaining that the court is only concerned with whether the employer was motivated by discriminatory animus, not whether the decision was fair or wise)).  Accordingly, summary judgment is due to be granted as to Wright's disability discrimination claim.

## II.   Legacy Did Not Engage in Gender Discrimination (Count Two).

Wright alleges that Legacy violated Title VII of the Civil Rights Act and the Pregnancy Discrimination Act when it terminated her employment and refused to accommodate her. (Doc. 1, pp.5-6.) Title VII prohibits employers from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). The prohibition on discrimination because of an individual's sex includes discrimination based on "pregnancy, childbirth, or related medical conditions." 42 U.S.C. § 2000e(k). The analysis required for a pregnancy discrimination claim is the same type of analysis used in other Title VII sex discrimination suits. *Armstrong v. Flowers Hosp., Inc.*, 33 F.3d 1308, 1312-13 (11th Cir. 1994).

To survive a summary judgment motion, a plaintiff asserting discrimination in violation of Title VII "must present sufficient facts to permit a jury to rule in her favor." *Lewis v. City of Union City*, 918 F.3d 1213, 1220 (11th Cir. 2019) (en banc) ("*Lewis I*"). A plaintiff can satisfy her burden in any one of three ways: (1) by presenting direct evidence of discriminatory intent; (2) by creating a triable issue of fact under the burden-shifting framework from *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); or (3) by presenting "a 'convincing mosaic' of circumstantial evidence that warrants an inference of intentional discrimination." *Id.* at 1220 & n.6.[6]

---

[6] Wright has not alleged or otherwise articulated a "mixed-motive" theory of gender discrimination, however even if she did, she would still need to present facts to infer that her pregnancy was at least a motivating factor in Legacy's decision to terminate her employment.

Here, Wright has no direct evidence of discrimination.  Direct evidence is evidence which reflects a discriminatory attitude correlating to the discrimination complained of by the employee. *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1086 (11th Cir. 2004) (cleaned up), *abrogated on other grounds, Lewis v. City of Union City, Ga.*, 918 F.3d 1079, 1091 (11th Cir. 2019) (en banc). It is "evidence that, if believed, proves [the] existence of [a] fact without inference or presumption." *Id*. (citation omitted). "'[O]nly the most blatant remarks, whose intent could mean nothing other than to discriminate on the basis of' some impermissible factor constitute direct evidence of discrimination." *Id*. (citation omitted). Here, Wright has not presented any remarks by decisionmakers or any other direct evidence of discrimination.

Moreover, Wright has not presented circumstantial evidence of discrimination because, as set forth in Section I above, Legacy terminated Wright's employment for a nondiscriminatory reason that she cannot overcome to show pretext: she violated the attendance policy by failing to call in her absence on two consecutive shifts. *Conner v. Fort Gordon Bus Co.*, 761 F.2d 1495, 1499 (11th Cir. 1985) (stating that the burden of an employer to produce a nondiscriminatory reason is "exceedingly light") (*quoting Perryman v. Johnson Prods. Co.,* 698 F.2d 1138, 1142 (11th Cir. 1983)). To prevail on a claim for discrimination in violation of Title VII under the *McDonnell Douglas* burden-shifting framework, a plaintiff must show that an employer's proffered legitimate reason for an adverse employment action was "merely a pretext for unlawful discrimination." *Lewis I*, 918 F.3d at 1221. The convincing mosaic test also requires that a plaintiff must show that an employer's justification for an adverse employment action was pretextual. *Lewis*

---

*Quigg v. Thomas Cty. Sch. Dist.*, 814 F.3d 1227, 1239 (11th Cir. 2016).  Here, for the reasons set forth above, there is no such evidence to infer pregnancy discrimination, either through comments or actions of Legacy employees.  It was Wright's violation of the attendance policy, and not her pregnancy, that resulted in her termination from employment.

*v. City of Union City*, 934 F.3d 1169, 1185 (11th Cir. 2019) ("*Lewis II*"). So, under either standard, a plaintiff must show that her employer's proffered, legitimate nondiscriminatory reason for the alleged unlawful action was a pretext for discrimination. *See Lewis I*, 918 F.3d at 1221; *Lewis II*, 934 F.3d 1185.

Furthermore, to establish pretext, a plaintiff must show both that the employer's proffered reason for an employment action was false *and* that the real reason for the action was discrimination. *Saint Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993). To make that showing, the plaintiff must meet the employer's proffered reason "head on and rebut it." *Chapman v. AI Transp.*, 229 F.3d 1012, 1030 (11th Cir. 2000) (en banc). A plaintiff can rebut an employer's proffered reason and avoid summary judgment by demonstrating "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." *Jackson v. State of Ala. St. Tenure Comm'n*, 405 F.3d 1276, 1289 (11th Cir. 2005) (quoting *Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir. 1997)).

Generally, when the plaintiff alleges discriminatory discipline, the plaintiff must show that the employer treated similarly situated employees not of the protected class more favorably. *See Maniccia v. Brown*, 171 F.3d 1364, 1368 (11th Cir. 1999); *Armstrong v. Flowers Hosp., Inc.*, 33 F.3d 1308, 1314 (11th Cir. 1994) (hospital was entitled to summary judgment where its challenged policy "has been applied in exactly the same way to pregnant and non-pregnant employees"); *Ferrell v. Masland Carpets, Inc.*, 97 F. Supp. 2d 1114, 1124 (S.D. Ala. 2000) (summary judgment granted in favor of employer where pregnant employee had "not produced any evidence to show that a non-pregnant employee was treated more favorably than she"). However, Wright has no evidence of this, nor any evidence that she was terminated for any other reason than the violation

14

of Legacy's attendance policy. *Armindo v. Padlocker, Inc.*, 209 F.3d 1319, 1320 (11th Cir. 2000) ("[T]he Pregnancy Discrimination Act ("PDA"), 42 U.S.C. § 2000e(k), is not violated by an employer who fires an employee for excessive absences, even if those absences were the result of the pregnancy, unless the employer overlooks the comparable absences of non-pregnant employees.").

Here, Wright cannot meet the nondiscriminatory reason head-on and rebut it, nor does she have any other evidence of pregnancy discrimination.  There is no evidence that the reason for her termination, as set forth in Legacy's records and the testimony of its representative and former Human Resources representative who took the action, was false, nor is there any other evidence of discrimination, such as absent employees who are not pregnant, do not call in, and are treated more favorably, or other evidence of animus or discriminatory intent. *See, e.g.*, *Jefferson*, 2021 WL 6137295, at *6-8 (finding that the termination in violation of the attendance policy was clearly supported by the record and there was no other evidence to rebut the reason or to suggest that the real reason was discrimination). Therefore, there is no triable issue as to Wright's gender discrimination claim.

**III.    Legacy Did Not Retaliate Against Wright in Violation of Title VII (Count Three).**

Wright alleges that she was retaliated against in violation of Title VII. (Doc. 1, pp.7-8.) Title VII's anti-retaliation provision makes it unlawful for an employer "to discriminate against any of his employees . . . because [the employee] has opposed any practice made an unlawful employment practice" by Title VII, or because of the employee's participation in a Title VII investigation or hearing. 42 U.S.C. § 2000e-3(a). To establish a prima facie case of retaliation under both Title VII and the ADA, "the plaintiff must show (1) that she engaged in statutorily protected expression; (2) that she suffered an adverse employment action; and (3) that there is

some causal relation between the two events." *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1363 (11th Cir. 2007).  In addition, the plaintiff must show that the adverse action would not have occurred but-for the protected activity. *Univ. of Tex. SW Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013). Once a plaintiff establishes a *prima facie* case, the defendant is tasked with providing a legitimate, nondiscriminatory reason for the action. *Bryant v. Jones*, 575 F.3d 1281, 1308 (11th Cir. 2009). After the defendant articulates a legitimate, non-discriminatory reason for their actions, the burden falls on the plaintiff to show that the defendant's reasons were false and that retaliation was the real reason behind the defendant's actions. *Id.*

Wright does not allege nor has she produced any evidence that she opposed any unlawful employment practice, or participated in a Title VII investigation or hearing. (*See* Doc. 1, pp.7-9, Doc. 23-5, p.3 (#7).)  *Furcon v. Mail Ctrs. Plus, LLC*, 843 F.3d 1295, 1311 (11th Cir. 2016) (the plaintiff must have "explicitly or implicitly" communicated her belief that an employment practice "constitutes unlawful employment discrimination"). Wright's communication of her pregnancy alone, or any complications of it (which were not communicated to Gelpi until after the decision was made to terminate her employment) is not sufficient. *Edwards v. Chime Solutions, Inc.*, No. 1:19-cv-4259-LMM, JKL, 2021 WL 2581597, at *9 (N.D. Ga. Feb. 5, 2021) (citing *Demers v. Adam Homes of NW Fla., Inc.*, 321 F. App'x 847, 852 (11th Cir. 2009)). For that reason alone, Wright fails to meet the elements necessary to establish a prima facie case of Title VII retaliation. And there is no direct or circumstantial evidence of retaliation. For the reasons set forth in Sections I and II above, Wright's termination was not because of any needs she had related to her pregnancy or because of any protected action in connection with her pregnancy, but rather because of her violation of the attendance policy.

16

**IV.**   **Legacy Did Not Retaliate Against Wright in Violation of the ADA (Count Four).**

Wright alleges that she requested a reasonable accommodation and following that request she was terminated from employment. (Doc. 1, p.9.)  Wright does not identify what she requested, but Legacy acknowledges that under the ADA, an employee's request for a reasonable accommodation may be considered a protected activity. However, Wright still cannot prevail under an ADA retaliation theory because (1) the request for an accommodation occurred *after* she had violated the attendance policy and was going to be terminated, and (2) Wright was terminated for a non-retaliatory reason and cannot establish pretext or other evidence of causation.

First, assuming that Wright's doctor's note excusing her from work was a request from Wright for an accommodation of leave (which the record does not establish), this request was made after she failed to appear for work without notice on her second consecutive day and the decision had already been reached to terminate her employment. *Bolton v. Baldwin Cty. Pub. Sch.*, 627 F. App'x 800 (11th Cir. 2015) (even if plaintiff had engaged in statutorily protected activity, there was no evidence that plaintiff "complained about the Board's alleged discrimination—either formally or informally—*before* Bolton's recommendation for employment was cancelled") (emphasis in original); *Cooper v. Walker Cty. E-911*, No. 6:16-CV-1746-TMP, 2018 WL 3585217, at *12 (N.D. Ala. July 26, 2018) ("A request for accommodation that comes post-termination does not trigger the employer's duty"); *Davis v. Auburn Bank*, 2016 WL 1605349, at *10 (M.D. Ala. Mar. 30, 2016), *report and recommendation adopted sub nom. Davis v. Bank*, 2016 WL 1560404 (M.D. Ala. Apr. 18, 2016), *aff'd sub nom. Davis v. Auburn Bank*, 704 F. App'x 837 (11th Cir. 2017) ("Plaintiff's EEOC filing cannot support a claim for employment retaliation because Plaintiff was already terminated at the time she filed the EEOC complaint.") Therefore, this purported request on November 19, 2018 cannot form the basis of a retaliation claim.

Second, as set forth above, there is no evidence that the adverse action – her termination – was caused by anything other than her violation of the attendance policy.  Therefore, due to the timing of Wright's request, as well as the legitimate reason for the employment decision, Legacy is entitled to summary judgment in its favor for Wright's ADA retaliation claim.

## **CONCLUSION**

There is no genuine issue of material fact regarding the reason Wright was terminated from her employment at Legacy, nor any other evidence of discrimination or retaliation. Legacy respectfully requests that the Court grant its motion for summary judgment on all pending claims and enter final judgment in its favor.

*s/ Christine Harding Hart*
MARK T. WAGGONER
CHRISTINE HARDING HART
*Attorneys for Defendant Legacy Cabinets, LLC*

OF COUNSEL:
HAND ARENDALL HARRISON SALE LLC
1801 5th Avenue North, Suite 400
Birmingham, Alabama 35203
(205) 324-4400
mwaggoner@handfirm.com

Post Office Box 123
Mobile, Alabama 36601
(251) 432-5511
chart@handfirm.com

## <u>CERTIFICATE OF SERVICE</u>

I do hereby certify that on 28th day of February, 2022, I electronically filed the foregoing pleading using the CM/ECF system which will serve the same electronically on the following counsel of record:

John C. Hubbard (jch@jchubbardlaw.com)

Whitney Seals (whitney@cochrunseals.com)

*s/ Christine Harding Hart*