IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| **MELINDA WRIGHT,** | ) | |
| | ) | |
|     **PLAINTIFF,** | ) | |
| | ) | |
| **V.** | ) | **1:21-CV-00447-NAD** |
| | ) | |
| **LEGACY CABINETS, LLC,** | ) | |
| | ) | |
|     **DEFENDANT.** | ) | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT LEGACY CABINETS, LLC'S MOTION FOR SUMMARY JUDGMENT**

**COMES NOW** the Plaintiff, by and through counsel, and responds in opposition to the Motion for Summary Judgment filed by Defendant, Legacy Cabinets, LLC, [Docs. 22-24; 26] as follows:

**I.    INTRODUCTION**

Plaintiff Wright's claims arise out of her termination from Defendant Legacy.  In October 2018, Plaintiff Wright found out she was pregnant.  Doc. 24-1; 118:14-20.  Since she was forty (40) years old and had a history of miscarriages, Plaintiff Wright's doctors classified her pregnancy as "high risk."  Id.; 122:4-9.  On November 13, 2018, while at work, Plaintiff experienced pregnancy-related bleeding, informed her supervisor, and left work to seek medical attention.  Id.; 127:1-19.  Plaintiff then sought medical attention from her normal physician and was put on bedrest until November 30, 2018.  Id.; 122:10-12.  Plaintiff states that she left a message on the "call in" number and also talked with Mr. Ricardo Gelpi (Mr. Gelpi") in Human Resources regarding her absenses.  Doc. 24-1; 164-14-17; 166:15-20.  In response, Plaintiff

Wright claims that Mr. Gelpi told her to bring in her doctor's excuses when she returned to work. Id.  On November 19, 2018, Plaintiff Wright met with Mr. Gelpi and at that time was terminated.

Defendant Legacy claims Plaintiff's alleged violation of the "no-call no show" policy was the sole reason for her firing.  Doc. 23-2; 39:3-20.  However, not only does Plaintiff Wright dispute violating the policy, Mr. Gelpi's notes state specifically that she was fired "due to her not knowing when she would be able to return and already missing so many days, we couldn't continue working with her."  Mr. Gelpi further notes that Plaintiff Wright was not eligible for FMLA.  Doc. 23-2; 48:2-19.

Plaintiff brings claims for her firing under the Americans with Disabilities Act (Count I) and The Pregnancy Discrimination Act and Title VII (Count).  Plaintiff Wright voluntarily dismisses her Retaliation Claim under Title VII.  Plaintiff's remaining claims use similar frameworks for analysis.  As discussed below, a jury should be allowed to resolve the material factual disputes that exist in this case and decide the reason for Plaintiff's termination.  As such, Plaintiff Wright requests that this Court deny Defendant Legacy's Motion for Summary Judgment.

## II. RESPONSE TO DEFENDANT'S STATEMENT OF UNDISPUTED FACTS

4. "Those disciplinary actions were not a factor in the decision to terminate Plaintiff Wright's employment for being absent for two consecutive shifts without notice. (Doc. 23-2 (39:3-20))."

**Response:**  Plaintiff does not dispute that the disciplinary actions were not a factor in the decision to terminate her employment, but Plaintiff certainly takes issue with the absolute misstatement of Defendant's attendance policy in Defendant's Brief.  The relevant attendance

policy states "any consecutive absence **of two days** without personally contacting the human resources department…" not "two consecutive shifts." (Doc. 26, pg. 9, para. 6). The ambiguity of the Defendant's attendance policy is at the heart of the factual dispute in this case. While Plaintiff has testified that she called in as per the policy, even assuming she did not, Plaintiff, allegedly missed two consecutive **shifts**, not two consecutive **days**. Defendant may now wish its policy said "two consecutive shifts" as it argues misleadingly in its brief, but the policy in effect at the time it fired the Plaintiff is written as "two consecutive days."

10. "…Wright does not recall exactly which days she called in that week to report her absence. (Doc. 24-1 (133:10- 135:23) ("I don't know exactly what day I called in or didn't") ("I don't know that I was a no call no show").)"

**Response:**

Plaintiff directly contradicts that was a "no-call no-show" by testifying that she called in to Defendant Legacy to let it know she was not coming in on November 15th. Doc. 24-1; 164-14-17. Most importantly, Plaintiff Wright talked with Mr. Gelpi in Human Resources and was told to bring a work excuse when she returned. Id.; 166:15-20.

12. "Regardless, Gelpi acknowledged at his meeting with Wright that she was unable to work and indicated that while he could have saved her job for a week (which was less time than she needed off); she would need to re-apply to work at Legacy once she was released to work. (Doc. 24-1 (138:11-19, 139:4-11); Doc. 23-2 (54:4-14))."

**Response:**

Defendant Legacy fails to state that Plaintiff Wright was terminated during this meeting. This lines up with Plaintiff Wright still thinking she had a job. As she testified "[Gelpi] told me that

he thought that he could save my job for me for a week while I was out on bed rest. And I took it to assume that I was fine, because of the 13 total days that I was out for bed rest, I only had eight working days. So I assumed that that meant everything was okay." Doc 24-1; 138:14-19.

### III.     STANDARD OF REVIEW

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper only when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. *Celotex Corp v. Catrett*, 477 U.S. 317, 322, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986). "A dispute is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (citation omitted).

### IV.     ARGUMENT

#### A.     ADA Claim (Count One).

"To establish a *prima facie* case of discrimination under the ADA, a plaintiff must show: (1) [she] is disabled; (2) [she] is a qualified individual; and (3) [she] was subjected to unlawful discrimination because of her disability. *Hudson v. Tyson Farms, Inc.*, 769 F. App'x 911, 915 (11th Cir. 2019), citing *Holly v. Clairson Indus., LLC*, 492 F.3d 1247, 1255-56 (11th Cir. 2007).

Defendant Legacy does not dispute the first prong in that Plaintiff Wright was temporarily disabled when her physician ordered bed rest. Defendant Legacy argues that Plaintiff Wright is not a qualified individual because she could not perform the essential functions of her job because she could not work and that she was not subjected to unlawful

discrimination because she was terminated for the non- discriminatory reason of allegedly violating the attendance policy.

As to the second prong, Plaintiff Wright is a qualified individual.  The ADA "covers people who can perform the essential functions of their jobs presently or in the immediate future."  *Roddy v. City of Villa Rica*, 536 F. App'x 995 (11th Cir. 2013).  An employee does not have to be capable of working on the exact day she is terminated to be a "qualified individual." If she can return to work "in the immediate future," she is still a "qualified individual" under the ADA.  *Brooks v. Peachtree Hospice of Ga.*, No. 1:18-cv-05649-ELR-LTW, 2020 U.S. Dist. LEXIS 256250 (N.D. Ga. Jan. 14, 2020).  Plaintiff Wright was placed on temporary bedrest until November 30, 2018 – which was eleven (11) days from the date she was terminated.  A short leave of absence would have allowed Plaintiff to return to work—thereby performing the essential job function of her position "in the immediate future."  *See Grant v. Hosp. Auth.*, No. 1:15-CV-201 (LJA), 2017 U.S. Dist. LEXIS 130113 (M.D. Ga. Aug. 16, 2017);  *Brooks*, No. 1:18-cv-05649-ELR-LTW, 2020 U.S. Dist. LEXIS 256250 (N.D. Ga. Jan. 14, 2020).

Instead of allowing Plaintiff Wright to take a short leave, as it led her to believe it would, it terminated Plaintiff Wright.  "An employer must provide such a reasonable accommodation for an employee with a known disability, unless it would result in undue hardship."  *Bagwell v. Morgan Cty. Comm'n*, 676 F. App'x 863 (11th Cir. 2017).

The ADA also imposes a procedural vision. Under the ADA, an employer may need "to initiate an informal, interactive process" with the employee to identify her limitations and possible accommodations.  29 C.F.R. § 1630.2(o)(3).  It is well settled that an ADA violation occurs when an employer fails to provide "reasonable accommodations" for an employee with a disability, unless doing so would impose an undue hardship on the employer.  *Crutcher v. Mobile*

*Hous. Bd.*, No. 04-0499-WS-M, 2005 U.S. Dist. LEXIS 35402 (S.D. Ala. Oct. 20, 2005). Plaintiff is a qualified individual that could perform the essential functions of her job and Defendant Legacy has not put forth evidence that such a short leave of absence would create an undue hardship. In fact, Defendant Legacy's corporate representative testified that Defendant Legacy "…typically would grant a small leave for a week or two if the person had a particular issue and they weren't able to qualify for FMLA, such as a family death or something like that." Doc. Doc. 23-2; 58:21-59:4. As such, Legacy has not and cannot show that a small leave for Plaintiff would have caused it undue hardship.

As to the third prong, Defendant Legacy argues it terminated Plaintiff Wright due to a legitimate, non-discriminatory reason in allegedly violating the attendance policy. The Eleventh Circuit analyses ADA claims under the *McDonnell Douglas* paradigm. *Wascura v. City of S. Miami*, 257 F.3d 1238, 1242 (11th Cir. 2001). A plaintiff can also demonstrate a "convincing mosaic" of circumstantial evidence that warrants an inference of intentional discrimination. *Lewis v. City of Union City*, 918 F.3d 1213 (11th Cir. 2019). Once the burden of establishing a legitimate reason for termination is met, the burden shifts back to the employee to show that the employer's proffered reason is pretext for discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817 (1973). "The heart of the pretext inquiry is not whether the employee agrees with the reasons that the employer gives for the discharge, but whether the employer really was motivated by those reasons." *Standard v. A.B.E.L. Servs. Inc.*, 161 F.3d 1318, 1333 (11th Cir. 1998). A plaintiff may demonstrate pretext by revealing "'such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions" in the employer's proffered reason for its adverse employment action "'that a reasonable factfinder could find [it]

unworthy of credence.'" *Springer v. Convergys Customer Mgmt. Grp., Inc.*, 509 F.3d 1344, 1348 (11th Cir. 2007).

A plaintiff can demonstrate the third element by showing that a similarly situated employee without a disability was treated more favorably than he or she was treated. *Godwin v. Mem'l Hosp. & Manor*, No. 1:15-CV-140 (LJA), 2018 U.S. Dist. LEXIS 51458, 2018 WL 1528204, at *11 (M.D. Ga. Mar. 28, 2018); see also *Wolfe v. Postmaster Gen.*, 488 F. App'x 465, 468 (11th Cir. 2012) (Under the ADA, "[t]o establish unlawful disparate treatment, a plaintiff generally must demonstrate that his employer treated similarly situated employees outside of his protected class more favorably than he was treated." (citing *Burke—Fowler v. Orange Cty.*, Fla., 447 F.3d 1319, 1323 (11th Cir. 2006)); see generally *Hill v. Branch Banking & Tr. Co.*, 264 F. Supp. 3d 1247, 1260 (N.D. Ala. 2017) (finding that plaintiff failed to show she was terminated "because of" her disability in part because her comparators were not "similarly situated").

This is the more difficult analysis for Plaintiff Wright due to the lack of comparators. However, Defendant Legacy's own corporate representative testified that Defendant Legacy "…typically would grant a small leave for a week or two if the person had a particular issue and they weren't able to qualify for FMLA, such as a family death or something like that." Doc. Doc. 23-2; 58:21-59:4. Defendant Legacy failed to offer this general policy to Plaintiff Wright and instead terminated her immediately. This is evidence a jury could consider that shows that Defendant Legacy treated similarly situated employees outside of her protected class more favorably than she was treated.

The "convincing mosaic" analysis does not require similarly situated comparators. Instead, sufficient evidence must be presented such that a reasonable jury may infer intentional discrimination by the decisionmaker. Such evidence is present in this case. First is Defendant

Legacy's inaccurate interpretation of its ambiguous attendance policy. The attendance policy states: "Any consecutive absence of **two days** without personally contacting the human resources department will be considered a voluntary resignation and will result in the employee's automatic termination." Doc. 23-2; 65:18-23 (emphasis added). Instead of giving the policy a plain meaning, Defendant Legacy had to define two consecutive "days" as two consecutive "shifts" in order to justify terminating Plaintiff Wright[1]. This is because Defendant Legacy alleges she failed to attend her shifts on November 15 and November 19. These are not consecutive days and therefore would not be a violation even if she failed to call in. Instead, Defendant Legacy alleges that "days" means "work days." Id.; 70:5-71:16.

More importantly, Plaintiff Wright did follow the policy by personally calling in. She even went beyond the policy and spoke with Mr. Gelpi in Human Resources. Plaintiff left work on November 13, 2018 and went to the hospital due to pregnancy related bleeding. She then called in to Defendant Legacy to let it know she was not coming in on November 15th. Doc. 24-1; 164-14-17[2]. Plaintiff Wright testified clearly that she was never a "no-call no-show." Id.; 164:19-20[3]. Plaintiff Wright even talked to Mr. Gelpi about her time off. Id.; 166:15-20[4]. While Defendant Legacy disputes these communications, a reasonable jury could absolutely

---

[1] In fact, further demonstrating the policy's ambiguity and that it is open to interpretation, Legacy in its Brief misstates this policy to this Court as being "two consecutive shifts." Doc. 26, p. 8, para 4.
[2] "I would have called them on the 13th to tell them that I was not coming into work. And if I had not, then I would have been a -- I would have called in on the 14th or the 15th."
[3] "I am never a no-call no-show. I loved my job."
[4] Q: "When did you talk to Ricardo? A: I don't remember the exact date, if it was the same date of the 13th or if it was the next day. But he knew that I was not coming back to work because he told me to bring him the excuse -- both excuses from the ER and from my doctor."

infer that these conversations happened, that Defendant Legacy only used the alleged attendance policy violation as a pretext in terminating her due to her pregnancy.

      **B.**      **Title VII and PDA Claim (Claim II)**

The Eleventh Circuit, when discussing the elements of a prima facie claim of pregnancy discrimination has held as follows: "We have held that, to establish a prima facie claim of pregnancy discrimination under Title VII, a plaintiff must establish that "(1) she is a member of a protected group; (2) she was qualified for her position; (3) she suffered an adverse employment action; and (4) employment or disciplinary policies were differently applied to her." *DuChateau v. Camp, Dresser & McKee, Inc.*, 713 F.3d 1298, 1302 (11th Cir. 2013) (citations omitted).

In this case, there is no dispute that Plaintiff was pregnant and, as such, was a member of a protected group. There is further no dispute that Plaintiff was qualified for the position and suffered an adverse employment action. As such, the Court must look at the remaining element of this claim, namely whether employment or disciplinary policies were differently applied to her.

And as held by the Supreme Court in 2015, the focus of a PDA discrimination claim is whether "an employer's policy treats pregnant workers less favorably than it treats nonpregnant workers similar in their ability or inability to work." *Young v. UPS*, 575 U.S. 206, 135 S. Ct. 1338, 1344, 191 L. Ed. 2d 279 (2015). Courts should use the same *McDonnell Douglas* burden-shifting framework as set out under the ADA Section. *Durham v. Rural/Metro Corp.*, 955 F.3d 1279, 1284 (11th Cir. 2020). In addition, Plaintiffs may prove intent even without comparator

evidence through the "convincing mosaic of circumstantial evidence" approach. *Hicks v. City of Tuscaloosa*, 870 F.3d 1253, 1257 (11th Cir. 2017).

Plaintiff Wright's arguments under the PDA and Title VII are essentially identical to the her ADA claim.  In 2020, a Court in the Northern District of Georgia analyzed a similar case in *Edwards v. Chime Sols.*, No. 1:19-cv-4259-LMM-JKL, 2021 U.S. Dist. LEXIS 119408 (N.D. Ga. Feb. 5, 2021).  The *Edwards* Court noted the lack of comparators and used the "convincing mosaic" as the framework on the plaintiff's PDA claim.[5]  *Id.*  In *Edwards*, the plaintiff was pregnant, had a doctor's excuse for her absence, and was terminated for allegedly violating the employer's attendance/call-in policy.  The plaintiff filed suit claiming the reason was pretext and the actual reason was based on her pregnancy.   While lengthy and fact-centric, the Court concluded that a reasonable jury could find the plaintiff was fired for due to her pregnancy based upon a convincing mosaic of facts.

Here the facts clearly show the alleged, and disputed, attendance policy violation was a pretext for Plaintiff Wright's termination.  It is undisputed that the only reason for the firing was the alleged violation of Legacy's ambiguous attendance policy.  Doc. 23-2; 39:3-20.  Viewing the facts most favorable to Plaintiff Wright, Defendant Legacy knew of the pregnancy related bleeding and allowed Plaintiff to leave work and seek medical attention shortly before her alleged "no-call no-show."  Doc. 24-1; 127:1-19.  Plaintiff directly contradicts that was a "no-call no-show" by claiming she called in to Defendant Legacy to let it know she was not coming in on November 15th.  Doc. 24-1; 164-14-17.  Most importantly, Plaintiff Wright talked with Mr. Gelpi and was told to bring a work excuse when she returned.  Id.; 166:15-20.  Mr. Gelpi notes fail to mention anything about the "no-call no-show" policy.  Doc. 23-2; 49:8-16.  Instead, he

---

[5] While the Court only analyzed a PDA claim, as noted above, this framework also applies to ADA claims.

writes in part that Plaintiff Wright was terminated "due to her not knowing when she would be able to return and already missing so many days, we couldn't continue working with her." Id.; 48:2-19.  This reason directly contradicts Defendant Legacy's "no-call no show" pretext and contradicts its unofficial policy of generally allowing a short leave for employees not eligible for FMLA.  Doc. 23-2; 58:21-59:4.

## V. CONCLUSION

For the reasons stated herein, Plaintiff Wright respectfully requests this Honorable Court deny the Defendant Legacy's Motion for Summary Judgment in its entirety and to allow her claims to proceed to trial.

                                 Respectfully Submitted,

                                 /s/ John C. Hubbard
                                 John C. Hubbard
                                 Attorney for Plaintiff

**OF COUNSEL:**

John C. Hubbard LLC
PO Box 953
Birmingham, AL 35203
(205) 378-8121

## CERTIFICATE OF SERVICE

I hereby certify on this the 21st day of March, 2022, the foregoing was filed using the Court's CM/ECF filing system which will serve said filing upon the following:

Mark T. Waggoner, Esq.
Christine Harding Hart, Esq.
HAND ARENDALL HARRISON SALE LLC
1801 5th Avenue North, Suite 400
Birmingham, AL 35203


and I hereby certified that I have mailed the foregoing document by U.S. Mail, postage prepaid, to the following:

NONE.

/s/ John C. Hubbard