FILED
2022 Oct-28  PM 03:51
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION**

| | | |
|---|---|---|
| MELINDA WRIGHT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:21-cv-00447-NAD |
| | ) | |
| LEGACY CABINETS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER DENYING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

For the reasons stated below and on the record in the June 9, 2022 motion

hearing, the court **DENIES** Defendant Legacy Cabinets, Inc.'s motion for summary

judgment (Doc. 22).

**INTRODUCTION**

Plaintiff Melinda Wright, a former employee of Defendant Legacy, filed a

complaint alleging discrimination and retaliation claims under the Americans with

Disabilities Act of 1990, as amended by the ADA Amendments Act of 2008, 42

U.S.C. § 12101 et seq. (ADA), and the Pregnancy Discrimination Act of 1978 (PDA)

and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. (collectively,

Title VII).

Plaintiff Wright, a female employee, alleges that Legacy terminated her after

Wright notified Legacy that she was pregnant and requested that Legacy

accommodate her short-term disability of a high-risk pregnancy.   Doc. 1.   Legacy argues that it did not discriminate against Wright, and instead that Wright was terminated because she violated Legacy's employee attendance policies.   *See* Doc. 26.   On Legacy's summary judgment motion (Doc. 22), the court concludes that there are triable issues of fact for a jury on Wright's Title VII and ADA discrimination claims.

## BACKGROUND

### A.   Procedural background

On March 29, 2021, Plaintiff Wright initiated this action, alleging that Defendant Legacy (her employer) had discriminated against her based on her sex and short-term disability, and retaliated against her based on those same protected characteristics.   Doc. 1.   Pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties consented to magistrate judge jurisdiction.   Doc. 7.

After the close of discovery, Legacy filed this summary judgment motion. Doc. 22.   The motion has been fully briefed.   Doc. 26; Doc. 27; Doc. 28.

On June 1, 2022, the court entered an order granting in part Legacy's summary judgment motion.   Doc. 30.   The court dismissed with prejudice Wright's Title VII retaliation claim (Count 3), and ADA retaliation claim (Count 4).   Doc. 30.[1]

_____

[1] For that reason, this order technically denies *in part* Legacy's summary judgment motion.

On June 9, 2022, the court held a motion hearing on the remaining claims for ADA discrimination (Count 1) and Title VII discrimination (Count 2).   *See* Minute Entry (Entered: 06/09/2022).

**B.    Legal background**

Title VII prohibits employers from discriminating "against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."   42 U.S.C. § 2000e-2(a)(1).   The PDA amended Title VII to clarify that the prohibition against discrimination based on an individual's sex includes discrimination based on "pregnancy, childbirth, or related medical conditions."   42 U.S.C. § 2000e(k). Title VII, as amended by the PDA, also mandates that individuals affected by pregnancy "shall be treated the same for all employment-related purposes . . . as other persons not so affected but similar in their ability or inability to work."   *Id.* Consequently, the focus of a PDA discrimination claim is whether "an employer's policy treats pregnant workers less favorably than it treats nonpregnant workers similar in their ability or inability to work."   *Young v. UPS*, 575 U.S. 206, 210 (2015).

The ADA prohibits employers from discriminating against a qualified individual with a disability because of that disability.   42 U.S.C. § 12112(a). "While pregnancy is generally not considered a disability [under the ADA], a

pregnancy-related impairment may be considered a disability, if it substantially limits a major life activity." *Jeudy v. Attorney Gen., Dep't of Justice*, 482 F. App'x 517, 520 (11th Cir. 2012).

### C.   Factual background

#### 1.   Legacy and its employee attendance policies

Legacy is cabinet manufacturing company.   Doc. 26 at 7.   Legacy employs approximately 400 people at its Eastaboga, Alabama plant.   Doc. 26 at 7.   In November 2018 (the relevant time period on this motion), Legacy was experiencing high turnover among its employees.   Doc. 26 at 11.   Legacy employees often "simply stopped reporting to work," and Legacy automatically would process those employees' terminations.   Doc. 26 at 11.

Legacy's employee handbook states that "[r]egular attendance and being on time every day is an essential function of every employee's job."   Doc. 26 at 8; Doc. 24-1 at 61.   Legacy's attendance policies require an employee to contact the human resources (HR) department "one hour before [the employee's] shift begins," if the employee expects to be absent or late.   Doc. 26 at 8.   Legacy maintains a log of employees who call each day to report absences.   Doc. 26 at 10; Doc. 23-2 at 81–95.

In relevant part, Legacy's employee handbook states that "[a]ny *consecutive absence of two days without personally contacting the human resources department*

will be considered a voluntary resignation and will result in the employee's automatic termination."   Doc. 26 at 9 (emphasis added); *see* Doc. 23-2 at 60.

Legacy's employee handbook also instructs each employee as follows:   "If you are *absent for 3 or more days due to illness* you must, when you return to work, deliver to your immediate supervisor a *statement signed by your attending physician* that you were examined and/or received treatment for your illness from that physician."   Doc. 26 at 9 (emphasis added); *see* Doc. 23-2 at 60.

### 2.    Wright's employment with Legacy

In January 2018, Wright began working for Legacy through a staffing company (Onin Staffing).   Doc. 26 at 7.   In August 2018, Wright became a Legacy employee.   Doc. 26 at 8.   While working for Legacy, Wright performed a variety of tasks, including placing hinges on doors, sanding cabinets, and assembling cabinets.   Doc. 26 at 7.

In January, April, and August 2018, Wright received (and acknowledged receipt of) Legacy's employee handbook, which included the attendance policies discussed above.   Doc. 26 at 8.   Wright also acknowledged receipt of Legacy's employee attendance policies, which emphasized the importance of regular attendance.   Doc. 26 at 8; *see* Doc. 24-1 at 59 ("Attendance – Very Important to be here everyday and be on time.   Stay in contact with your supervisor on days and hours . . . . If you're going to be late or out make sure you call into HR one hour

before your shift begins.").

In November 2018 (the relevant time period), Wright worked for Legacy 4 days per week—Monday through Thursday.   Doc. 26 at 8.

### 3.   Wright's pregnancy, related absences, and termination

On October 22, 2018, Wright learned that she was pregnant.   Doc. 26 at 9; Doc. 24-1 at 25.   Wright called Legacy on that day to inform the company that she would be absent, and that she "would return as soon as [she] found out if the baby was going to be okay."   Doc. 26 at 10; Doc. 24-1 at 32.   Wright returned to work the next day (October 23, 2018); and, because of her pregnancy, her supervisors moved her to another position.   Doc. 26 at 9–10; Doc. 24-1 at 42.

When she returned to work on October 23, 2018, Wright also informed Ricardo Gelpi—in Legacy's HR department—that she was pregnant.   Doc. 26 at 10.   The court here notes that this fact is disputed.   In his declaration, Gelpi avers that he did not know that Wright was pregnant until he met with her on November 19, 2018—the date on which Wright was terminated.   Doc. 26 at 10 (citing Doc. 23-3 at 2).   But, "[f]or purposes of this motion, Legacy acknowledges that in the light most favorable to Wright, Gelpi and other supervisors had knowledge that Wright was pregnant before she was terminated."   Doc. 26 at 10.

On Tuesday, November 6, 2018, Wright called Legacy to report that she would be absent with a doctor's excuse until Thursday, November 8, 2018; and, on

November 8, 2018, Wright returned to work.   Doc. 26 at 10; Doc. 23-2 at 44.

Legacy records demonstrate that, during the next week (i.e., the week of Monday, November 12, 2018), Wright did not report to work on any of her 4 working days—Monday (November 12), Tuesday (November 13), Wednesday (November 14), or Thursday (November 15).   Doc. 26 at 10; Doc. 27 at 3; Doc. 23-2 at 44.[2]

But the parties dispute when and if Wright called Legacy to provide notice that she would be absent on those days, and when and whether Wright should have been considered a "no-call no-show" subject to automatic termination under Legacy's employee attendance policies.

Legacy acknowledges that Wright called on at least Monday, Tuesday, and Wednesday of that week (November 12–14, 2018).   Doc. 26 at 11; Doc. 23-2 at 90–92.   Legacy asserts that Wright did not call on Thursday of that week (November 15, 2018), and then did not call on Monday of the next week (November 19, 2018). Consequently, Legacy asserts that Wright was subject to automatic termination under its employee attendance policies, because she missed two consecutive days of work—Thursday, November 15, 2018, and Monday, November 19, 2018—without calling to report those absences.   Doc. 26 at 11.   (As noted above, Wright did not

---

[2] This fact is disputed.   In her deposition, Wright testified that she reported to work on Tuesday, November 13, 2018, but left on account of complications related to her pregnancy.   Doc. 24-1 at 38.

work on Fridays.)

On the other hand, Wright testified in her deposition that Legacy knew she would be absent from work, and consequently that she did not need to call on Thursday, November 15, or Monday, November 19, 2018.   Doc. 26 at 11.

In particular, Wright testified that she called the HR department and talked to Gelpi, and that Gelpi told her to bring a work excuse when she returned.   Doc. 27 at 3; Doc. 24-1 at 43–44.

According to Legacy, on Monday, November 19, 2018, when Wright did not report for work, Gelpi began processing her termination as an automatic "no-call no-show" termination.   Doc. 26 at 11; Doc. 23-2 at 22.

On that same day (Monday, November 19, 2018), Wright returned to the Legacy plant and brought a doctor's note to Gelpi, "reflecting that she was receiving treatment for her pregnancy, and to excuse her from work starting November 17, 2018 for 13 days"—that is, until November 30, 2018.   Doc. 26 at 12; Doc. 24-1 at 34, 91.

Wright argues that she was terminated in her meeting with Gelpi on Monday, November 19, 2018, despite the fact that Gelpi previously had told her to bring a doctor's note when she returned.   Doc. 27 at 3; Doc. 24-1 at 37 ("[Gelpi] told me that he thought that he could save my job for me for a week while I was out on bed rest.   And I took it to assume that I was fine, because of the 13 total days that I was

8

out for bed rest, I only had eight working days.   So I assumed that that meant everything was okay.").

## LEGAL STANDARD

Summary judgment is appropriate when the movant establishes that "there is no genuine dispute as to any material fact," and that the movant "is entitled to judgment as a matter of law."   Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).   A material fact is one that might affect the outcome of the case.   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).   And a dispute about a material fact is "genuine," if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."   *Id.*

To avoid summary judgment, the nonmovant must go beyond mere allegations to offer specific facts creating a genuine dispute for trial.   *Celotex*, 477 U.S. at 324–25.   The court's responsibility is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."   *Anderson*, 477 U.S. at 249.   The court must construe all evidence and draw all reasonable inferences in favor of the nonmovant.   *Centurion Air Cargo, Inc. v. UPS Co.*, 420 F.3d 1146, 1149 (11th Cir. 2005).

Where there is no genuine dispute of material fact for trial, the movant is entitled to judgment as a matter of law.   Fed. R. Civ. P. 56(a), (c).

**DISCUSSION**

**I.    There are triable issues of fact for a jury on Wright's Title VII discrimination claim.**

There are genuine disputes of material fact for a jury on Wright's Title VII discrimination claim.   "Title VII . . . prohibits employers from 'discharg[ing]' or 'otherwise . . . discriminating against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex.'"   *Durham v. Rural/Metro Corp.*, 955 F.3d 1279, 1284 (11th Cir. 2020) (quoting 42 U.S.C. § 2000e-2(a)(1)).   With respect to a pregnancy discrimination claim, the Eleventh Circuit has explained that, "[i]n *Young*, the Supreme Court announced a new, modified *McDonnell Douglas* burden-shifting framework to be used in PDA cases involving indirect evidence of disparate treatment."   *Durham*, 955 F.3d at 1285 (citing *Young*, 575 U.S. at 228; *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)).   "Under that framework, a plaintiff may make out a prima facie case of discrimination by 'showing actions taken by the employer from which one can infer, if such actions remain unexplained, that it is more likely than not that such actions were based on a discriminatory criterion illegal under' the Act."   *Durham*, 955 F.3d at 1285 (quoting *Young*, 575 U.S. at 228).

After a plaintiff makes a prima facie showing, the employer may come forward with "legitimate, nondiscriminatory reasons" for its action.   *Young*, 575 U.S. at 229.   "If the employer presents an ostensible 'legitimate, nondiscriminatory'

reason for what it has done, the plaintiff then has the opportunity to attempt to demonstrate that the employer's stated reason is 'in fact pretextual.'"   *Durham*, 955 F.3d at 1285 (quoting *Young*, 575 U.S. at 229).   On a pregnancy discrimination claim, "a plaintiff does enough to survive summary judgment if she shows both that 'the employer's policies impose a significant burden on pregnant workers' and that 'the employer's legitimate, nondiscriminatory reasons are not sufficiently strong to justify the burden, but rather—when considered along with the burden imposed— give rise to an inference of intentional discrimination.'"   *Durham,* 955 F.3d at 1285 (quoting *Young*, 575 U.S. at 229).

Generally speaking, a plaintiff also can make a prima facie showing of discrimination by presenting "a 'convincing mosaic' of circumstantial evidence that warrants an inference of intentional discrimination."   *Lewis v. City of Union City*, 918 F.3d 1213, 1220 & n.6 (11th Cir. 2019).   The "convincing mosaic" test requires that a plaintiff must show that an employer's reason for an adverse employment action was pretextual.   *Lewis v. City of Union City*, 934 F.3d 1169, 1185 (11th Cir. 2019) ("*Lewis II*").

To establish pretext, a plaintiff must show both that the employer's reason for an employment action was false, and that the real reason for the action was discrimination.   *Saint Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993).   And, to make that showing, a plaintiff must meet the employer's reason "head on and

rebut it." *Chapman v. AI Transp.*, 229 F.3d 1012, 1030 (11th Cir. 2000). A plaintiff can rebut an employer's reason by showing "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." *Jackson v. State of Ala. Tenure Comm'n*, 405 F.3d 1276, 1289 (11th Cir. 2005) (quoting *Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir. 1997)). A plaintiff can establish pretext "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981).

In this case, Wright alleges that Legacy's "termination of [her] employment on the basis of her status as a pregnant female constitutes discrimination based on sex in violation of The Pregnancy Discrimination Act and Title VII." Doc. 1 at 7. Wright further alleges that Legacy's "refusal to accommodate a pregnant female constitutes discrimination based on sex in violation of The Pregnancy Discrimination Act and Title VII." Doc. 1 at 7.

Everyone agrees that there is no direct evidence of discrimination.

With respect to the relevant indirect evidence of alleged discrimination, Legacy argues that "Wright has not presented circumstantial evidence of

discrimination because . . . Legacy terminated Wright's employment for a nondiscriminatory reason that she cannot overcome to show pretext:  she violated the attendance policy by failing to call in her absence on two consecutive shifts." Doc. 26 at 19.  Legacy argues further that Wright failed to produce evidence that she did not violate Legacy's employee attendance policy, and that Wright cannot show pretext in light of Legacy's records related to her termination.  Doc. 28 at 6–7.

Based on the record evidence (and construing all evidence and drawing all reasonable inferences in Wright's favor, *see Centurion Air Cargo*, 420 F.3d at 1149), genuine disputes of material fact preclude summary judgment on these grounds. Wright has identified sufficient prima facie evidence from which a jury reasonably could infer that her termination and Legacy's alleged failure to accommodate "were based on a discriminatory criterion."  *Durham*, 955 F.3d at 1285.

***First***, a reasonable jury could find that Wright did *not* violate Legacy's attendance policies.  As explained above, Legacy's employee handbook states that "[a]ny consecutive absence of two days without personally contacting the human resources department will be considered a voluntary resignation and will result in the employee's automatic termination."  Doc. 26 at 9; Doc. 23-2 at 60.  The employee handbook also requires that, "[i]f you are absent for 3 or more days due to illness you must, when you return to work, deliver to your immediate supervisor a

statement signed by your attending physician that you were examined and/or received treatment for your illness from that physician."   Doc. 26 at 8; Doc. 23-2 at 60.

While Legacy acknowledges that Wright called to report that she would be absent on several of the relevant days in the week of Monday, November 12, 2018 (Doc. 26 at 11; Doc. 23-2 at 90–92), Legacy argues that Wright was automatically terminated for a "consecutive absence of two days" or "shifts" (Doc. 26 at 19).   But the attendance policy only subjected an employee to automatic termination for a "consecutive absence of two days *without personally contacting*" the HR department.   Doc. 23-2 at 60 (emphasis added).   And Wright testified in her deposition that she called the HR department, talked to Gelpi, and informed him that she would be out of work for an extended period.   Doc. 26 at 11; Doc. 27 at 3; Doc. 24-1 at 43–44.   So, even if Wright had a "consecutive absence of two days," a jury reasonably could find that she had "personally contact[ed]" the HR department (Doc. 23-2 at 60), and that she did not violate the attendance policy in this regard.

Moreover, a reasonable jury could find that Wright complied with the attendance policy that required a doctor's note for an "absen[ce] [of] 3 or more days."   Doc. 23-2 at 60.   Wright testified that, when she talked to Gelpi in the week of Monday, November 12, 2018, he told her to bring a doctor's note when she returned to work.   Doc. 27 at 3; Doc. 24-1 at 44.   And, when Wright returned to

14

Legacy on Monday, November 19, 2018, she brought a doctor's note.   Doc. 26 at 12.   Legacy is correct that Wright in her deposition could not say when she talked to Gelpi in the week of Monday, November 12, 2018 (Doc. 26 at 11; Doc. 24-1 at 36), but at this stage the court must construe the evidence in Wright's favor.

Legacy argues that Wright cannot show pretext because the attendance "policy was applied to all employees equally," and because its Rule 30(b)(6) corporate representative "[wa]s not aware of any employees who violated this attendance policy and were not terminated."   Doc. 26 at 13.   But one of the primary jury questions, among others, is whether Wright violated the attendance policy in the first place.   While Legacy is correct that Wright has not identified any similarly situated comparators (*see* Doc. 27 at 7), the Eleventh Circuit does not require that showing.   For instance, a plaintiff "alleging pregnancy discrimination need not identify specific non-pregnant individuals treated differently from her, if the employer violated its own policy in terminating her."   *Armindo v. Padlocker, Inc.*, 209 F.3d 1319, 1321 (11th Cir. 2000) (citing *Byrd v. Lakeshore Hosp.*, 30 F.3d 1380 (11th Cir. 1994)).[3]

---

[3] *Accord Everett v. Grady Mem. Hosp. Corp.*, 703 F. App'x 938, 948 (11th Cir. 2017) ("As this Court has said, 'the plaintiff's failure to produce a comparator does not necessarily doom the plaintiff's [pregnancy discrimination] case.'   Instead, a plaintiff can present [other] circumstantial evidence of an employer's discriminatory intent." (quoting *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011))).

Likewise, Legacy argues that Wright cannot show pretext because "Wright has no evidence that Gelpi's belief that she failed to call in on two consecutive days was false" (Doc. 28 at 7), and because "Title VII does not take away an employer's right to interpret its rules as it chooses, and to make determinations as it sees fit under those rules" (Doc. 28 at 11 (citation and quotation marks omitted)).  *See Nix v. WLCY Radio/Rahall Commc'ns*, 738 F.2d 1181, 1187 (11th Cir. 1984); *see also Duckworth v. Pilgrim's Pride Corp.*, 764 F. App'x 850, 855–56 (11th Cir. 2019) ("None of [the plaintiff's] arguments address whether [the defendant] honestly believed that [the plaintiff] was violating the attendance policy . . . .").  But those arguments overlook the record evidence—which at this stage the court must construe in Wright's favor—that Wright talked to Gelpi during the week of Monday, November 12, 2018, informed him of her extended absence, and brought a doctor's note with her when she returned (as instructed by Gelpi and as required by the attendance policy).  *See* Doc. 26 at 12; Doc. 27 at 3; Doc. 24-1 at 44.  Thus, even on Legacy's interpretation of the attendance policy, a reasonable jury could find that Wright did not violate the policy, and that Gelpi could not have reasonably believed that she had.

In addition, based on Wright's testimony about her phone call with Gelpi and other record evidence, a jury reasonably could infer that Legacy applied its attendance policies inconsistently as to Wright herself.  In her deposition, Wright

16

testified that she had missed several days of work in July 2018 because of a hospitalization for Crohn's disease, and that she was not required to call the HR department on a daily basis to report her absences.  Doc. 24-1 at 24, 36.  Wright testified further that, based on her past experience with the hospitalization for Crohn's disease while working at Legacy, she believed that—during the week of Monday, November 12, 2018—she did not need to continue calling daily until her return to work, as she had informed the HR department that she would be absent for an extended period on account of her pregnancy.  Doc. 24-1 at 36.  It appears that a reasonable jury could find that Wright was treated differently when she was hospitalized for Crohn's disease in July 2018 from when she was absent for complications related to a high-risk pregnancy in November 2018.

*Second* (and as explained above), there also is a genuine dispute of material fact about when Gelpi learned of Wright's pregnancy.  *See* Doc. 26 at 17.  A jury's determination of this fact issue would be relevant on the question whether Legacy actually believed that Wright had violated the attendance policies and terminated her for that reason, or whether Wright's termination was discriminatory.  *See, e.g.*, *Duckworth*, 764 F. App'x at 855–56.

Relatedly, a reasonable jury could find that Gelpi's notes show that the decision to terminate Wright was not limited to the belief that she violated the attendance policies.  Gelpi's notes state that on November 19, 2018, Wright said

17

that "the doctor put her on bed rest due to her being a high risk and wasn't sure when she would be able to return. . . . Due to her not knowing when she would be able to return and already missing so many days we couldn't continue working with her." Doc. 23-2 at 43.   A jury should review the evidence on whether Wright was "Term[inated] due to attendance" (Doc. 23-2 at 40), for "missing so many days" (Doc. 23-2 at 43), "[d]ue to her not knowing when she would be able to return" (Doc. 23-2 at 43), because "she wasn't able to work" (Doc. 23-2 at 15), or on account of impermissible discrimination, etc.   *See also* Doc. 23-3 (Gelpi declaration) (similar).

*Third*, there is a genuine dispute of material fact about when Wright was terminated.   Legacy points to evidence that Gelpi automatically processed Wright's termination as a "no-call no-show" before Wright returned to Legacy on November 19, 2018.   Doc. 26 at 11; Doc. 23-2 at 40.   But Wright argues that she was terminated during her meeting with Gelpi on November 19.   Doc. 27 at 3; Doc. 24-1 at 37.   Again, a jury should review the evidence on when and why Wright was terminated, and when Gelpi learned of Wright's pregnancy and the related complications.

*   *   *

In sum, given these genuine disputes of material fact, Wright has identified sufficient evidence of both prima facie discrimination and pretext, such that a "reasonable factfinder could find . . . unworthy of credence" Legacy's position that

Wright was terminated for violating its attendance polices. *Jackson*, 405 F.3d at 1289 (11th Cir. 2005); *see Armindo*, 209 F.3d at 1321 ("employer violated its own policy in terminating [the plaintiff]"). In this case, a reasonable jury could find that the record evidence "give[s] rise to an inference of intentional discrimination." *Durham*, 955 F.3d at 1285 (quoting *Young*, 575 U.S. at 229); *see Byrd*, 30 F.3d at 1383 (inference of pregnancy discrimination arose where employer fired pregnant employee for excessive absences despite employee having missed no more than the sick time allotted to her under company policy).

## II.   There are triable issues of fact for a jury on Wright's ADA discrimination claim.

There are genuine disputes of material fact for a jury on Wright's ADA discrimination claim. The ADA protects a qualified individual from employment discrimination on the basis of a disability, and prohibits an employer from discriminating against a qualified individual with a disability because of that individual's disability. 42 U.S.C. § 12112(a); *United States Equal Employment Opportunity Comm'n v. St. Joseph's Hosp., Inc.*, 842 F.3d 1333, 1343 (11th Cir. 2016). To establish a prima facie case of discrimination under the ADA, a plaintiff must show (1) that she is disabled, (2) that she is a qualified individual, and (3) that she was subjected to unlawful discrimination because of her disability. *Mazzeo v. Color Resolutions Int'l, LLC*, 746 F.3d 1264, 1268 (11th Cir. 2014) (citing *Holly v. Clairson Indus., LLC*, 492 F.3d 1247, 1255–56 (11th Cir. 2007)).

Like a pregnancy discrimination claim, absent direct evidence of disability discrimination, the *McDonnell Douglas* burden shifting framework applies to a disability discrimination claim.  *See Durley v. APAC, Inc.*, 236 F.3d 651, 657 (11th Cir. 2000) ("The burden of proof for an ADA claim is also based on the framework set forth in *McDonnell Douglas*.").  But (as discussed above), "the *McDonnell Douglas* framework is not, and was never intended to be the *sine qua non* for a plaintiff to survive summary judgment in an employment discrimination case." *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011).  A plaintiff also can survive summary judgment if she presents "a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker."  *Id.* (quotation marks omitted); *see also Davidson v. CHSPSC LLC*, 861 F. App'x 306, 311 (11th Cir. 2021) (applying the "convincing mosaic" framework to an ADA discrimination claim).

In this case, Wright alleges that Legacy's "termination of [her] employment on the basis of disability constitutes discrimination," and that Legacy's "refusal to accommodate a pregnant female experiencing a high-risk pregnancy constitutes discrimination on the basis of disability."  Doc. 1 at 6.

For purposes of this summary judgment motion, Legacy does not dispute that Wright "was temporarily disabled when her physician ordered bed rest."  Doc. 26 at 15.

Instead, Legacy argues that because Wright "was no longer qualified to work" she was not a "qualified individual" under the ADA, and that "in any event [Wright's] employment was not terminated because of her pregnancy-related impairments."   Doc. 26 at 15.

Based on the record evidence (and construing all evidence and drawing all reasonable inferences in Wright's favor, *see Centurion Air Cargo*, 420 F.3d at 1149), Legacy has not shown that it is entitled to judgment as a matter of law on these grounds.[4]

As explained above, Wright returned to the Legacy plant on Monday, November 19, 2018; Wright brought a doctor's note to Gelpi, "reflecting that she was receiving treatment for her pregnancy, and to excuse her from work starting November 17, 2018 for 13 days"—that is, until November 30, 2018.   Doc. 26 at 12; Doc. 24-1 at 34, 91 ("Please excuse my patient from work. She will return to work

---

[4] The court notes that the parties' arguments on the ADA claim are less developed than on the Title VII claim.   It may be that at trial Legacy moves for judgment as a matter of law pursuant to Rule 50.   But at this time—based on the record evidence and the parties' briefing—Legacy has not made the showing necessary for summary judgment under Rule 56.   *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991) ("The moving party bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial.   Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment."); *Anderson*, 477 U.S. at 255 ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whe[re] he is ruling on a motion for summary judgment . . . .").

at the completion of the excuse.   The effective start date is 11/17/2018 for 13 days.").

Wright was terminated that same day—November 19, 2018.   Doc. 26 at 11; Doc. 23-2 at 22.

Legacy argues that Wright is not a "qualified individual" based on the record evidence that she "was unable to work for several days, was placed on bed rest by her doctor," and "presented a note from her doctor excusing her from work."   Doc. 26 at 16; *see also* Doc. 23-2 at 15 ("[I]t doesn't matter whether she was pregnant or ill or had another reason why she couldn't report to work.   The problem is, she wasn't able to work.").

But, under the ADA, a "qualified individual" is someone with a disability who, "*with or without reasonable accommodation*, can perform the essential functions of the employment position."   42 U.S.C. § 12111(8) (emphasis added); *see also Holly*, 492 F.3d at 1256.

In addition, "qualified individuals" are people "who can perform the essential functions of their jobs presently or *in the immediate future*."   *Wood v. Green*, 323 F.3d 1309, 1314 (11th Cir. 2003) (emphasis added).

Without more, based on the record evidence, Legacy has not established that it is entitled to judgment as a matter of law on the "qualified individual" element of Wright's ADA claim.   The evidence shows that Wright's doctor had recommended

bed rest for 13 days—from November 17 to November 30, 2018.   Doc. 24-1 at 91.

But Wright was terminated on November 19, 2018.   Doc. 26 at 11; Doc. 23-2 at 22.

It appears that Wright intended to return to work after a "small leave."   Doc. 27 at

6.[5]   As Wright testified, "[Gelpi] told me that he thought that he could save my job

for me for a week while I was out on bed rest.   And I took it to assume that I was

fine, because of the 13 total days that I was out for bed rest, I only had eight working

days.   So I assumed that that meant everything was okay."   Doc. 24-1 at 37.

        Thus, it appears that a reasonable jury could find that, "with . . . a reasonable

accommodation" (42 U.S.C. § 12111(8)), Wright could have performed the

"essential functions" of her job "in the immediate future" (*Wood*, 323 F.3d at 1314).

Stated otherwise, there is insufficient evidence to show that after a "small leave"

(Doc. 27 at 6), and perhaps with other reasonable accommodation, Wright could *not*

have done her job.

        Indeed, Wright argues that under the ADA an employer may need "to initiate

an informal, interactive process" with an employee to identify her limitations and

possible accommodations.   Doc. 27 at 5 (quoting 29 C.F.R. § 1630.2(o)(3)); *see*

_____

[5] Legacy does not argue that Wright failed to request or demand a reasonable
accommodation.   *See, e.g.*, *Adigun v. Express Scripts, Inc.*, 742 F. App'x 474, 476
(11th Cir. 2018) ("An employer's duty to provide a reasonable accommodation . . .
'is not triggered unless a specific demand for an accommodation has been made.'"
(quoting *Gaston v. Bellingrath Gardens & Home, Inc.*, 167 F.3d 1361, 1363 (11th
Cir. 1999))).

*also, e.g.*, 42 U.S.C. § 12112(b)(5)(A) (disability discrimination includes failing to make reasonable accommodations "to the known physical or mental limitations of an otherwise qualified individual with a disability"); *Earl v. Mervyns, Inc.*, 207 F.3d 1361, 1365 (11th Cir. 2000) (an ADA plaintiff must show that her employer had notice of her disability).   There is no evidence that Legacy engaged in that process with Wright.

In fact, Legacy's Rule 30(b)(6) corporate representative testified that Legacy "typically would grant a small leave for a week or two if the person had a particular issue and they weren't able to qualify for FMLA, such as a family death or something like that."   Doc. 27 at 6; Doc. 23-2 at 16.   And Gelpi's notes state that "[he] explained to [Wright] that [Legacy] only work[s] with employees that do not qualify for FMLA about a week or so and that [Legacy] kept it consistent to be fair."   Doc. 23-2 at 43.   But it appears that Legacy did not offer that typical accommodation to Wright.

Instead, Legacy argues that "Gelpi did not know that Wright was disabled because of pregnancy complications at the time he decided to process her termination for violating the attendance policy," and that "any discussions of a leave or other accommodation were after the decision to terminate [Wright's] employment was already made and therefore could not have been the cause or reason for her termination."   Doc. 28 at 7 n.5; *see also* Doc. 26 at 17 & n.5 (similar).   But, as

discussed above (*see* Part I *supra*), there are genuine disputes of material fact about when and why Wright was terminated.

Furthermore, "[a]n employer must provide such a reasonable accommodation for an employee with a known disability, unless it would result in undue hardship." *Bagwell v. Morgan Cty. Comm'n*, 676 F. App'x 863, 866 (11th Cir. 2017) (citing *Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1255 (11th Cir. 2001)).   Legacy argues that, "as of the time of her termination, Wright was not sure when she would be able to return [to work], and ultimately could not lift anything over five pounds for the duration of her pregnancy."   Doc. 28 at 9 n.3 (citations omitted).   But there is no argument or evidence that those limitations "would result in undue hardship" for Legacy.   *Bagwell*, 676 F. App'x at 866.[6]

Finally, Legacy argues that, "regardless of whether Wright established that she was disabled and a qualified individual, she has no evidence that her employment was terminated because of her pregnancy."   Doc. 26 at 16.   But this argument is coextensive with Legacy's argument on Wright's Title VII discrimination claim. The same genuine disputes of material fact discussed above preclude summary

---

[6] At the June 9, 2022 motion hearing, Legacy also argued that the opportunity for Wright to reapply for her job could be considered a reasonable accommodation. Assuming without deciding that termination with an opportunity to reapply could be considered a reasonable accommodation, the court still must construe the evidence and all reasonable inferences in Wright's favor.   At this stage, the reapplication argument is too speculative to grant judgment as a matter of law to Legacy.

judgment on this basis.   *See supra* Part I.

## CONCLUSION

For the reasons stated above, the court **DENIES** Defendant Legacy's summary judgment motion (Doc. 22).

The court **SETS** this case for a telephone status conference on **November 8, 2022, at 11:00 AM**.

**DONE** and **ORDERED** this October 28, 2022.

_____

**NICHOLAS A. DANELLA**
UNITED STATES MAGISTRATE JUDGE